

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 1 2002

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

LODGED

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
JS-2/JS-3 _____
Scan Only _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY F. GOTTLIEB, el al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SBC COMMUNICATIONS, INC., et al.,<br><br>Defendants. | Civil Action No: CV 00-04139 AHM (MANx)<br><br>[PROPOSED] FINAL ORDER APPROVING SETTLEMENT OF CLASS ACTION AND DISMISSAL WITH PREJUDICE |

This matter is before the Court on the Joint Motion of Plaintiffs Larry F. Gottlieb,

Barry P. Resnick, Adrienne F. Resnick, Dorothy S. Dowding, John B. Riley, Allan M.

Filipeck, Linda Acox, Jean-Luc Gaudremeau, Diane Wilson, and James Weinald

(collectively, "Plaintiffs") and defendants SBC Communications Inc. ("SBC") and Pacific

Telesis Group ("PTG") (collectively, "Defendants") for final approval of the Settlement

Agreement reached in this class action.

The Court, having entered an Order on ~~July __~~, August 16 2002 preliminarily approving the

Settlement Agreement (a copy of which is attached as Exhibit A to the Order of ~~July __~~, August 16

approval) and conditionally certifying the following settlement

class:

ENTERED
CLERK, U.S. DISTRICT COURT

DEC 1 1 2002
12-11-02

San Francisco CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

- 1 -

Case No. CV 00-04139 [PROPOSED] FINAL ORDER
APPROVING CLASS ACTION SETTLEMENT AND
FINAL JUDGMENT

187

1       All individuals who were participants in the PTG Supplemental Retirement

2       and Savings Plan for Salaried Employees and/or in the PTG Supplemental

3       Retirement and Savings Plan for Non-Salaried Employees who had a

4       balance in the AirTouch Stock Fund within either of those two plans as of

5       December 31, 1997;

6  having directed that Notice be given individually and directly to all Class Members of the

7  proposed settlement and of a hearing (the "Fairness Hearing") scheduled to determine

8  whether the proposed settlement should be finally approved as fair, adequate, and

9  reasonable, and to hear any objections to any of these matters; having considered the

10  parties' joint motion for final approval of the Settlement Agreement and documents in

11  support thereof; having considered the Settlement Agreement and all exhibits attached

12  thereto; and having considered all of the submissions and arguments with regard to

13  Plaintiffs' motion for final approval; and having held the Fairness Hearing and considered

14  the submissions and arguments made in connection therewith;

15       THE COURT HEREBY FINDS AS FOLLOWS:

16       1.     Without affecting the finality of this Order and Judgment, the Court retains

17  jurisdiction over the interpretation, administration and consummation of the Settlement

18  Agreement, including but not limited to the payments for plaintiffs' attorneys' fees and

19  litigation costs.

20       2.     Notice to the Class Members has been given in an adequate and sufficient

21  manner, and the notice given constitutes the best notice practicable, complying in all

22  respects with federal law and the requirements of due process.  Notice given to Class

23  Members was reasonably calculated under the circumstances to apprise Class Members of

24  the pendency of this action, of all material elements of the proposed Settlement, and of their

25  opportunity to object to or comment on the Settlement and to appear at the Fairness

26  Hearing.  Full opportunity has been afforded to Class Members to participate in the

27  Fairness Hearing.  All Class Members wishing to be heard have been heard.  Accordingly,

28  the Court finds that all Class Members are bound by this Order.

1    3.    The Order of _August 16_, 2002 of this Court certifying the

2    settlement class defined above pursuant to Fed. R. Civ. P. Rule 23(a) and 23(b)(1) and

3    (b)(2) is confirmed.

4    4.    Because the Court certified the settlement class under Rule 23(b)(1) and

5    (b)(2), Class Members may not opt out of the settlement Class.

6    5.    The Court has held a hearing to consider the fairness, reasonableness, and

7    adequacy of the proposed settlement, has been advised of any objections to or comments on

8    the settlement, and has fairly considered such objections and comments.

9    6.    The Settlement Agreement was made in good faith. Arms'-length

10    negotiations took place between Class Counsel and Defense Counsel that resulted in the

11    proposed settlement.

12    7.    The proposed settlement – being in all respects fair, reasonable, adequate,

13    proper, and in the best interests of the Class Members, given the benefits of settlement and

14    the risks, complexity, expenses, and probable duration of further litigation between Class

15    Members and Defendants – is accordingly finally approved.

16    8.    In accordance with the terms of the Settlement Agreement, which are hereby

17    incorporated by reference as though fully set forth herein, it is hereby ordered, adjudged,

18    and decreed as follows: the Consolidated Amended Complaint in this action is dismissed

19    with prejudice. The Agreement and this Order forever bars any Class Member from

20    asserting the Released Claims as defined in ¶ 1.01(p) of the Agreement. Nothing in that

21    dismissal shall be deemed to affect any Non-Released claims as defined in ¶ 1.01(p) of the

22    Settlement Agreement.

23    9.    Nothing in this Order or the Settlement Agreement and its contents and no

24    aspect of the settlement is, or shall be deemed to be, an admission of any violation of any

25    statute or law or of liability by Defendants or of the truth of the allegations in the complaint.

26    10.    In the interests of justice, the Court finds that there is no just reason to delay

27    of entry of a final judgment of dismissal with prejudice of this action as against the

28

1  Defendants and all Released Parties, as defined in the Settlement Agreement, and the Clerk of

2  the Court is therefore directed to enter such a final judgment.

3       11.  Terms used in this Order that are defined in the Settlement Agreement are, unless

4  otherwise defined herein, used in this Order as defined in the Settlement Agreement.

5       12.  Attached hereto as Exhibit A and incorporated herein by reference are the Court's

6  Findings of Fact and Conclusions of Law.

7

8      **IT IS SO ORDERED.**

9  Date: <u>DECEMBER 11</u>, 2002

10

11                    A. Howard Matz
          United States District Court Judge for the
          United States District Court for the
          Central District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter is before the Court on Plaintiffs' Motions for Final Approval of Class Action Settlement, for Attorneys' Fees and Costs, and for Incentive Awards to Class Representatives. The Court, having considered the papers submitted and the pertinent oral argument, hereby finds and rules as follows.

## I.     INTRODUCTION

This action arises out of Defendants' administration of two retirement plans for employees of SBC Communications, Inc. ("SBC") and Pacific Telesis Group ("PTG"). SBC acquired PTG on or about April 1, 1997 in a corporate merger. Following that merger, PTG has continued to operate under its own name, as a wholly-owned subsidiary of SBC.

Plaintiffs are current and former employees of PTG and SBC who were participants in or beneficiaries of one of two 401(k) Plans administered by Defendants for the benefit of PTG employees. The 401(k) plan for salaried employees was known as the PTG Supplemental Retirement and Savings Plan for Salaried Employees ("Salaried Plan"). The 401(k) plan for nonsalaried employees was known as the PTG Supplemental Retirement and Savings Plan for Nonsalaried Employees ("Nonsalaried Plan"). Prior to 1998, all Plaintiffs' retirement accounts included stock in AirTouch Communications, Inc. ("AirTouch"). Plaintiffs and other plan participants had the right to take some or all of their AirTouch shares out of the plans. After SBC acquired PTG, SBC merged the plans with SBC's savings plans, which did not contain AirTouch Stock Funds, and the AirTouch Stock Funds that existed in the PTG plans were consequently liquidated. Plan participants could elect to have their AirTouch Stock Fund assets invested in other investment options within the SBC plans. AirTouch was subsequently acquired by Vodafone PLC.

In this lawsuit, Plaintiffs allege that, in eliminating the Plans' AirTouch Stock Funds, PTG and SBC breached their fiduciary duties to the plans'

1  participants in violation of the Employee Retirement Income Security Act of 1974

2  ("ERISA").  Plaintiffs further allege that when PTG and SBC communicated with

3  the Plans' participants regarding the participants' options upon elimination of the

4  AirTouch Stock Funds, they breached their fiduciary duties to the plans'

5  participants by failing to give complete and accurate information about the

6  participants' right to keep their AirTouch stock by taking it out of the plans.  SBC

7  and PTG deny that the decision to eliminate the plans' AirTouch Stock Funds

8  violated any fiduciary duties owed to the plaintiffs.  SBC and PTG also deny that

9  their communications with the plans' participants were in any way inadequate.

10  Two complaints related to the above facts were originally filed in federal

11  court:  *Haney, et al. v. Pacific Telesis Group, et al.*, Case No. 00-758 AHM

12  (MANx) and *Gottlieb, et al. v. SBC Communications, Inc., et al.*, Case No. 00-

13  4139.  After this Court dismissed federal and state securities law claims alleged in

14  the *Haney* complaint, the *Haney* and *Gottlieb* actions were consolidated by order

15  dated October 17, 2000.  Ten plaintiffs from the two original cases then filed a

16  consolidated amended complaint on November 3, 2000.  That complaint became

17  the operative pleading in this action.

18  After conducting substantial discovery, the parties submitted this matter to

19  voluntary mediation on December 20, 2001 and April 23, 2002.  The parties

20  agreed to a settlement, and submitted their agreement and proposed class notice

21  to this Court for preliminary approval.  After a hearing on July 22, 2002, the

22  Court certified this case as a class action for purposes of settlement under Federal

23  Rules of Civil Procedure 23(b)(1) and (b)(2) and granted preliminary approval of

24  the proposed settlement.  Plaintiffs now move this Court for an order granting

25  final approval to the class settlement, awarding incentives to fifteen

26  representative plaintiffs, and awarding $2,462,500.00 in attorneys' fees and

27  $391,763.51 in costs.

28  **II.    THE SETTLEMENT AGREEMENT**

2

The settlement agreement provides as follows:

(1)  The "class" is defined as: "All individuals who were participants in the Pacific Telesis Group Supplemental Retirement and Savings Plan for Salaried Employees and/or in the Pacific Telesis Group Supplemental Retirement and Savings Plan for Nonsalaried Employees who had a balance in the AirTouch Stock Fund within either of those two plans as of December 31, 1997." Settlement Agreement § 1.01(b).

(2)  The Defendants' insurer, Chubb Insurance Co., will pay $10 million plus interest on behalf of Defendants to settle the class claims. *Id*. § 3.06(a).

(3)  The class members will release all claims related to elimination of the Air Touch Stock Funds, merger of the PTG plans into the SBA plans, and Defendants' communications to class members about the funds' elimination or merger. The class members will not release any ERISA claims based on recordkeeping errors. *Id*. § 1.01(p) (defining "Released Claims").

(4)  The Settlement Administrator will be Rosenthal & Company ("Rosenthal"). *Id*. § 1.01(t). All costs of administration will come out of the $10 million fund. *Id*. § 3.06(b). Attorneys' fees and costs of litigation also will be deducted from the fund.

(5)  The remaining settlement fund sum will be paid into the SBC Salaried and Non-Salaried Plans and deposited into the accounts of class members. *Id*. § 3.06(e). The amount given to each class member will be determined according to the balance that member had in AirTouch Stock Funds as of December 31, 1997. *Id*. § 3.06(f)(1). Settlement amounts distributed into the SBC plans will be considered restorative contributions and will be invested according to the plan participants' current investment instructions. *Id*. § 3.06(g)(3).

(6)  If a class member no longer has an account with the SBC plans, an account will be set up for him or her. If the settlement amount distributed into such

3

1    an account does not exceed $5,000, that amount will be automatically

2    distributed to the class member subject to all rollover rights the class

3    member has under the SBC plans or applicable law.  If the settlement

4    amount exceeds $5,000, the class member will be given the opportunity to

5    elect any payment or rollover option available under the SBC Plans.  *Id.* §

6    3.06(g)(4).

7 (7)  Class members are not allowed to opt out of the settlement.  *Id.* § 3.04.

8 (8)  The parties and their counsel shall make no public statements regarding the

9    Settlement pending final approval.  *Id.* § 3.07.

10 **III.    NOTICE**

11    In support of their motion for preliminary approval of this class settlement,

12 the parties submitted a proposed class notice.  At the hearing held on July 22,

13 2002, the Court instructed the parties to prepare a revised class notice that would

14 meaningfully advise class members as to the estimated final settlement amount

15 per AirTouch unit and as to the estimated costs class counsel would seek.  The

16 Court also instructed the parties to make the class notice available on the Internet

17 and to list the appropriate web site address in the notice itself.  The parties

18 subsequently submitted a revised class notice, and the Court approved that notice

19 by order dated August 14, 2002.

20    Notice of the proposed settlement was then mailed to each known class

21 member, and a copy of the notice was made available at www.sbc-

22 airtouchsettlement.com.  The notice provided class members with a summary of

23 the litigation, informed class members as to the terms of the proposed settlement

24 (including the proposed method for distributing funds among the class members)

25 and informed them that they would not be permitted to opt out of the class.  The

26 notice also advised that class counsel would seek Court approval for payments

27 (not to exceed $2500 (each) to certain representative plaintiffs drawn from the

28 amount available for attorneys' fees) and that class counsel would request $2.5

4

1   million in fees and approximately $420,000 in costs to be paid from the

2   settlement fund.

3          The notice informed class members that any comment or objection should

4   be filed with the Court by October 11, 2002 in order to ensure meaningful

5   consideration. Finally, the notice informed class members that they could appear

6   at the final approval hearing to comment on or object to the settlement (and/or to

7   the attorneys' request for fees and costs) or to enter an appearance for any other

8   reason. Although subsequently the date of the final hearing was subsequently

9   continued to December 5, 2002, Plaintiffs' attorney J. Paul Gignac was available

10  outside the courtroom at the time of the originally scheduled hearing. Declaration

11  of J. Paul Gignac ¶ 8. Only one class member appeared, and she indicated that

12  she did not have any objection to the settlement but was interested in learning

13  more about it. *Id.* ¶¶ 8-9. Class counsel informed her of the new date and time

14  for the hearing and offered to answer any questions she might have. *Id.* ¶ 10.

15  **IV.    THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT**

16         There is a strong judicial policy favoring settlement of class actions. *Class*

17  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). A settlement

18  should be approved if it is "fundamentally fair, adequate and reasonable." *Id.*

19  This determination requires a balancing of several factors, which may include

20  some or all of the following: (1) the strength of plaintiffs' case; (2) the risk,

21  expense, complexity, and likely duration of further litigation; (3) the stage of the

22  proceedings and the extent of discovery; (4) the adequacy of the proposal; (5) the

23  experience and views of class counsel; and (6) the reaction of class members to

24  the proposed settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th

25  Cir. 2000). In addition, a settlement may not be approved if it is the product of

26  fraud or collusion between the parties. *Id.*

27

28

5

1      **A.    The Strength of Plaintiffs' Case and the Risk, Expense and**

2               **Complexity of Further Litigation**

3          Plaintiffs have two distinct claims.  First, Plaintiffs contend that by

4  eliminating the Plans' AirTouch stock, Defendants breached their fiduciary duties

5  (the "fund elimination claim").  Second, Plaintiffs contend that Defendants also

6  breached their fiduciary duties by providing incomplete or inaccurate information

7  about participants' rights to keep their AirTouch stock by taking it out of the

8  plans (the "misrepresentation claim").  Defendants deny that they breached their

9  fiduciary duties in any way and find strong support in recent Supreme Court

10  precedent for their denials as to the fund elimination claim.  *See Lockheed Corp.*

11  *v. Spink*, 517 U.S. 882, 889-90 (1996); *Hughes Aircraft Co. v. Jacobson*, 525 U.S.

12  432, 443-444 (1999).  In both *Lockheed* and *Hughes*, the Supreme Court held that

13  plan sponsors could not be liable for breach of fiduciary duty based on

14  amendments made to their plans.  After conducting some discovery in this case,

15  Plaintiffs determined that the elimination of AirTouch Stock Funds had been

16  achieved by way of plan amendments.  While the ultimate outcome as to

17  Plaintiffs' fund elimination claim is not certain, *Lockheed* and *Hughes* identify a

18  central weakness in Plaintiffs' claim.

19          This litigation also involved complex questions of law under ERISA, as

20  well as complex questions relating to the appropriate remedies available to

21  Plaintiffs.  This case had been ongoing for two years when the parties achieved a

22  settlement agreement.  Plaintiffs had, at the time of settlement, moved for class

23  certification, and that motion was vigorously contested.  The parties also had

24  indicated that this case would involve substantial additional motion practice.

25          Thus, the Court finds that the weakness evident in Plaintiffs' fund

26  elimination claim, as well as the complexity and expense of further litigation,

27  weigh in favor of settlement.

28

1  **B.    The Stage of the Proceedings and the Extent of Discovery**

2       The parties to this case conducted substantial discovery.  SBC deposed all

3  current named Plaintiffs and some formerly named plaintiffs.  Plaintiffs deposed

4  the Director of Benefit Plans Administration for the PTG health and welfare

5  benefit plans and the SBC Director of Benefits responsible for administration of

6  the Salaried and Nonsalaried Savings Plans.  Plaintiffs also reviewed

7  approximately 135,000 documents produced by Defendants, including governing

8  plan documents, documents related to the decision to merge the PTG and SBC

9  plans, plan merger documents, documents related to the decision to discontinue

10  the AirTouch Funds, and communications with plan participants about the plan

11  merger and discontinuance of the AirTouch Funds.

12       Although additional discovery may have been required if this case

13  continued to trial, the deposition testimony and documents referred to above

14  represent the core of Plaintiffs' claims.  Class counsel were in a good position at

15  the time of settlement to evaluate the evidence and assess the value of potential

16  recovery.

17  **C.    The Adequacy of the Proposed Settlement**

18       In their consolidated complaint, Plaintiffs allege that at the time of the

19  AirTouch Funds elimination, their AirTouch stock was worth $635 million

20  Consolidated Amended Complaint ¶ 10.  At the hearing held prior to preliminary

21  approval, the Court questioned class counsel about the difference between that

22  amount and the $10 million provided by the settlement.  Having considered the

23  facts of this case and the parties' submissions and oral argument, the Court finds

24  that the settlement is adequate.  Plaintiffs' ability to recover on their claims,

25  particularly their fund elimination claim, is far from certain, and the difference

26  between the trading price of SBC and Vodafone common stock (the measure of

27  damages) has fluctuated and continues to fluctuate significantly.  Moreover, a

28  cash settlement for a fraction of potential recovery does not render a settlement

1   inadequate or unfair. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459

2   (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th

3   Cir.1982)).   The settlement funds will provide recovery to all class members and

4   will be distributed fairly among the class members on a pro rata basis.

5          **D.     The Experience and Views of Class Counsel**

6          Class counsel are uniquely able to assess the potential risks and rewards of

7   litigation.  Here, Plaintiffs have been ably represented by knowledgeable class

8   counsel with many years of combined (and often successful) class litigation

9   experience.[1]  The Court is familiar with the quality and thoroughness of class

10  counsel's work on this case, as well as their reputation, and accords their opinion

11  corresponding weight.  Class counsel support approval of the proposed

12  settlement.

13         **E.     The Reaction of Class Members to the Proposed Settlement**

14         Notice of the settlement was mailed to 29, 198 class members.  Forty-five

15  class members contacted class counsel.  All requested and received information

16  about the mechanics of the settlement, and several expressed satisfaction with the

17  terms of the settlement.  One class member expressed concern about her ability to

18  roll settlement amounts into her individual retirement account ("IRA").

19  Declaration of Steven M. Tindall ¶ 9.  By letter, class counsel informed her that

20  former plan participants' rollover rights are protected by the settlement

21  agreement. *Id. See* Settlement Agreement § 3.06(g)(4).

22         In a letter sent to Rosenthal, the Settlement Administrator, Jean-Luc

23  _____

24  [1]The class is represented by the law firms of Lieff, Cabraser, Heimann &
    Bernstein, LLP; Arias, Ozzello & Gignac; Lewis & Feinberg, P.C.; Cohen, Milstein,
25  Hausfeld & Toll, P.L.L.C.; the Gottesdiener Law Office; and Haney, Buchanan &
    Patterson, LLP.  J. Paul Gignac, now with Arias, Ozzello & Gignac, previously
26  represented Plaintiffs while with his prior firm, Cappello & McCann.  Attorney Eli
27  Gottesdiener also previously represented Plaintiffs while working at Sprenger &
    Lang.  The Law Office of Gerald P. Cunningham also worked on this matter early in
28  the litigation.

1    Gaudremeau, a class representative, indicated some ambivalence with respect to

2    the settlement agreement.  While Mr. Gaudremau's letter states that he is

3    dissatisfied with Defendants' denial of liability and complains that he will not

4    recover what he estimates to have been his total loss, Mr. Gaudremau also notes

5    that he did sign the settlement agreement because he recognized that the money

6    the settlement will provide is important for the members of the class.  Mr.

7    Gaudremau's letter indicates that he would have preferred to have his proverbial

8    "day in court" so that Defendants, or others like them, would be held accountable.

9    However, Mr. Gaudremau decided to place what he describes as the interest of

10   the class ahead of his own.

11        In addition to Mr. Gaudremau's letter, the Court also received one

12   additional letter from class member David B. Delamore.  Mr. Delamore's letter

13   expresses a general dissatisfaction with the settlement and with Defendants'

14   conduct.

15        Although the Court understands that these two class members feel they

16   have been wronged and deserve a larger recovery, the Court finds, based on its

17   consideration of the file and the information presented by the parties, that this

18   settlement provides a fair and adequate result for the class as a whole.

19   **F.    Fraud or Collusion**

20        The parties to this case achieved settlement only after arms-length

21   negotiation through mediation.  "A presumption of fairness, adequacy, and

22   reasonableness may attach to a class settlement reached in arms-length

23   negotiations between experienced capable counsel after meaningful discovery."

24   Manual for Complex Litigation (Third) § 30.42 (1995).  Here, two class

25   representatives also attended the mediation in person. Memorandum in Support of

26   Motion for Final Approval at 2.  There is no evidence, nor has there been any

27   suggestion, that fraud or collusion played any part in this settlement.

28        In conclusion, the Court, having considered the above factors, finds the

9

1   settlement in this case to be fair, adequate and reasonable.

2   **V.    INCENTIVE AWARDS**

3         The Court also approves the limited incentive awards sought for fifteen

4   (15) representative Plaintiffs, or former representative Plaintiffs, who were

5   deposed by Defendants.[2] These awards ($2,500 per plaintiff) will be drawn from

6   the amount set aside for attorneys' fees and costs, not from the net settlement

7   funds available to class members.

8         "Incentive awards are not uncommon in class litigation where, as here, a

9   common fund has been created for the benefit of the class." *Hughes, et al. v.*

10  *Microsoft Corp., et al.*, 2001 U.S. Dist. LEXIS 5976, *39 (W.D. Wash. 2001)

11  (Coughenour, C.J.).  In this case, the fifteen representative plaintiffs who will be

12  entitled to an incentive award put forth substantial time and effort during the

13  course of this already-lengthy litigation.  They assisted counsel in their

14  investigations, assisted in preparation of the complaints, met with counsel to

15  prepare for their depositions, sat for those depositions, produced documents at

16  their depositions, and regularly reviewed pleadings, correspondence and other

17  documentation.  Declaration of J. Paul Gignac ¶ 5.  Some of these Plaintiffs also

18  participated in this litigation while still employed by Defendants.

19        Given these Plaintiffs' efforts, and the risk they bore of not recovering any

20  of their costs, the Court finds that the $2500 sought for each Plaintiff is eminently

21  fair and reasonable.

22  **VI.   ATTORNEYS' FEES AND COSTS**

23        In common fund cases such as this one, the district court has discretion to

24

25

26

27        [2]These Plaintiffs are Larry F. Gottlieb, Barry P. Resnick, Adrienne F. Resnick,
    Dorothy S. Dowding, John B. Riley, Allan M. Filipeck, Linda Acox, Jean-Luc

28  Gaudremeau, Diane Wilson, James Weinald, Darlene Haney, Steven Gunning,
    Christopher Seibert, Dahlia Amodei and Susan Kahue.

1    award fees based either on a lodestar or percentage-of-the-fund method.[3]

2    *Vizcaino, et al. v. Microsoft, et al.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Here,

3    the parties have proceeded based on a percentage-of-the-fund calculation, and

4    class counsel seek $2,462,500.00 in fees. This amount (from which the incentive

5    awards also will be drawn) is below the 25% that was listed in the notice to class

6    members and that the Ninth Circuit has described as a "benchmark" in common

7    fund cases. *Vizcaino*, 290 F.3d at 1047.

8        No class member has objected to the fee award provided for in the class

9    notice. Morever, a fee disbursement of $2,462,500 is appropriate in light of the

10   circumstances of this case. Class counsel have achieved significant results for the

11   class. As described above, this case was vigorously litigated and a victory for

12   Plaintiffs was far from certain. Counsel have acquitted themselves well and have

13   achieved a fair and adequate settlement for their clients. By obtaining a

14   settlement that provides for disbursement into the Plaintiffs' plan accounts, class

15   counsel generated additional benefits for their clients in the form of favorable tax

16   treatment. Class counsel also bore the significant risk necessarily attendant in

17   this contingency fee litigation. At the time settlement was achieved, the parties

18   had already spent two years litigating this case and had conducted substantial

19   discovery.

20       Class counsel's lodestar amount, as supported by the detailed fee reports

21   provided to the Court, is $1,932.326.40. The 1.27 multiplier represented by the

22   $2,462,500.00 request is reasonable in light of the time and labor required, the

23   complexity of the case, the contingent nature of counsel's fee arrangements, the

24   work counsel was unable to take on given this case, the experience and ability of

25

26

_____

27       [3]Application of common fund principles in awarding attorneys' fees is
appropriate even though ERISA itself contains a fee-shifting provision. *See Florin*
28   *v. Nationsbank of Georgia*, 34 F.3d 560 (7th Cir. 1994). *See also Staton, et al. v.*
*Boeing Co., et al.*, 2002 WL 31656586, *22-24, ___ F.3d ___ (9th Cir. 2002).

1     the attorneys and the results obtained.[4]  *See Kerr v. Screen Extras Guild, Inc.*, 526

2     F.2d 67, 70 (9th Cir. 1975) (listing factors to consider in determining reasonable

3     fee).  A 1.27 multiplier is well within the range of multipliers applied in common

4     fund cases.  *Vizcaino*, 290 F.3d at 1051 n.6 and Appendix.

5          Finally, the Court finds that class counsel's request for $391,763.51 in

6     costs also is reasonable.  Under the common fund doctrine, class counsel is

7     entitled to reimbursement for reasonable out-of-pocket expenses and costs in

8     obtaining a settlement.  *Vincent v. Hughes Air West Inc.*, 557 F.2d 759, 769 (9th

9     Cir. 1977).  The amount requested here is below the $420,000 estimate provided

10     in the class notice, and the Court has received no objection to that estimate.  The

11     Court has reviewed the itemized documentation of costs provided by class

12     counsel and has found no indication that the amount spent by class counsel in

13     pursuing this litigation is either unreasonable or inappropriate.

14                       **CONCLUSION**

15          For the foregoing reasons, the Court finds that the proposed settlement is

16     fair, adequate and reasonable.  Accordingly, the settlement is ORDERED

17     approved pursuant to Federal Rule of Civil Procedure 23(e).  The fifteen

18     representative Plaintiffs listed above, *see supra* note 2, shall be paid $2,500 each

19     from the Settlement Fund as incentive awards for their service on behalf of the

20     Class.  Class counsel shall be paid $2,462,500.00 in fees and $391,763.51 in

21     costs, *less* the incentive payments to class representatives, from the Settlement

22     Fund.

23

24

25

26

27

28         [4]This lodestar amount also does not include the 133 hours ($43,225.00) spent by Gerald P. Cunningham.  Mr. Cunningham apparently did not provide information concerning his time until after the motion for award of attorneys' fees was filed.