FILED
CLERK, U.S. DISTRICT COURT
DEC 11 2002
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ___
Send ✗
Enter ___
Closed ___
JS-5/JS-6 ✓
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY F. GOTTLIEB, el al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SBC COMMUNICATIONS, INC., et al.,<br><br>Defendants. | Civil Action No: CV 00-04139 AHM (MANx)<br><br>[~~PROPOSED~~] FINAL ORDER APPROVING SETTLEMENT OF CLASS ACTION AND DISMISSAL WITH PREJUDICE |

This matter is before the Court on the Joint Motion of Plaintiffs Larry F. Gottlieb, Barry P. Resnick, Adrienne F. Resnick, Dorothy S. Dowding, John B. Riley, Allan M. Filipeck, Linda Acox, Jean-Luc Gaudremeau, Diane Wilson, and James Weinald (collectively, "Plaintiffs") and defendants SBC Communications Inc. ("SBC") and Pacific Telesis Group ("PTG") (collectively, "Defendants") for final approval of the Settlement Agreement reached in this class action.

The Court, having entered an Order on ~~July~~ August 16, 2002 preliminarily approving the Settlement Agreement (a copy of which is attached as Exhibit A to the Order of ~~July~~ August 16, _____ approval) and conditionally certifying the following settlement class

ENTERED
CLERK, U.S. DISTRICT COURT
DEC 11 2002
12-11-02
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

- 1 -   Case No. CV 00-04139 [PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT AND FINAL JUDGMENT

187

    All individuals who were participants in the PTG Supplemental Retirement and Savings Plan for Salaried Employees and/or in the PTG Supplemental Retirement and Savings Plan for Non-Salaried Employees who had a balance in the AirTouch Stock Fund within either of those two plans as of December 31, 1997;

having directed that Notice be given individually and directly to all Class Members of the proposed settlement and of a hearing (the "Fairness Hearing") scheduled to determine whether the proposed settlement should be finally approved as fair, adequate, and reasonable, and to hear any objections to any of these matters; having considered the parties' joint motion for final approval of the Settlement Agreement and documents in support thereof; having considered the Settlement Agreement and all exhibits attached thereto; and having considered all of the submissions and arguments with regard to Plaintiffs' motion for final approval; and having held the Fairness Hearing and considered the submissions and arguments made in connection therewith;

    THE COURT HEREBY FINDS AS FOLLOWS:

    1. Without affecting the finality of this Order and Judgment, the Court retains jurisdiction over the interpretation, administration and consummation of the Settlement Agreement, including but not limited to the payments for plaintiffs' attorneys' fees and litigation costs.

    2. Notice to the Class Members has been given in an adequate and sufficient manner, and the notice given constitutes the best notice practicable, complying in all respects with federal law and the requirements of due process. Notice given to Class Members was reasonably calculated under the circumstances to apprise Class Members of the pendency of this action, of all material elements of the proposed Settlement, and of their opportunity to object to or comment on the Settlement and to appear at the Fairness Hearing. Full opportunity has been afforded to Class Members to participate in the Fairness Hearing. All Class Members wishing to be heard have been heard. Accordingly, the Court finds that all Class Members are bound by this Order.

1	3. The Order of August 16, 2002 of this Court certifying the
2	settlement class defined above pursuant to Fed. R. Civ. P. Rule 23(a) and 23(b)(1) and
3	(b)(2) is confirmed.

4	4. Because the Court certified the settlement class under Rule 23(b)(1) and
5	(b)(2), Class Members may not opt out of the settlement Class.

6	5. The Court has held a hearing to consider the fairness, reasonableness, and
7	adequacy of the proposed settlement, has been advised of any objections to or comments on
8	the settlement, and has fairly considered such objections and comments.

9	6. The Settlement Agreement was made in good faith. Arms'-length
10	negotiations took place between Class Counsel and Defense Counsel that resulted in the
11	proposed settlement.

12	7. The proposed settlement – being in all respects fair, reasonable, adequate,
13	proper, and in the best interests of the Class Members, given the benefits of settlement and
14	the risks, complexity, expenses, and probable duration of further litigation between Class
15	Members and Defendants – is accordingly finally approved.

16	8. In accordance with the terms of the Settlement Agreement, which are hereby
17	incorporated by reference as though fully set forth herein, it is hereby ordered, adjudged,
18	and decreed as follows: the Consolidated Amended Complaint in this action is dismissed
19	with prejudice. The Agreement and this Order forever bars any Class Member from
20	asserting the Released Claims as defined in ¶ 1.01(p) of the Agreement. Nothing in that
21	dismissal shall be deemed to affect any Non-Released claims as defined in ¶ 1.01(p) of the
22	Settlement Agreement.

23	9. Nothing in this Order or the Settlement Agreement and its contents and no
24	aspect of the settlement is, or shall be deemed to be, an admission of any violation of any
25	statute or law or of liability by Defendants or of the truth of the allegations in the complaint.

26	10. In the interests of justice, the Court finds that there is no just reason to delay
27	of entry of a final judgment of dismissal with prejudice of this action as against the
28

1  3. The Order of August 16, 2002 of this Court certifying the
2  settlement class defined above pursuant to Fed. R. Civ. P. Rule 23(a) and 23(b)(1) and
3  (b)(2) is confirmed.

4  4. Because the Court certified the settlement class under Rule 23(b)(1) and
5  (b)(2), Class Members may not opt out of the settlement Class.

6  5. The Court has held a hearing to consider the fairness, reasonableness, and
7  adequacy of the proposed settlement, has been advised of any objections to or comments on
8  the settlement, and has fairly considered such objections and comments.

9  6. The Settlement Agreement was made in good faith. Arms'-length
10 negotiations took place between Class Counsel and Defense Counsel that resulted in the
11 proposed settlement.

12 7. The proposed settlement – being in all respects fair, reasonable, adequate,
13 proper, and in the best interests of the Class Members, given the benefits of settlement and
14 the risks, complexity, expenses, and probable duration of further litigation between Class
15 Members and Defendants – is accordingly finally approved.

16 8. In accordance with the terms of the Settlement Agreement, which are hereby
17 incorporated by reference as though fully set forth herein, it is hereby ordered, adjudged,
18 and decreed as follows: the Consolidated Amended Complaint in this action is dismissed
19 with prejudice. The Agreement and this Order forever bars any Class Member from
20 asserting the Released Claims as defined in ¶ 1.01(p) of the Agreement. Nothing in that
21 dismissal shall be deemed to affect any Non-Released claims as defined in ¶ 1.01(p) of the
22 Settlement Agreement.

23 9. Nothing in this Order or the Settlement Agreement and its contents and no
24 aspect of the settlement is, or shall be deemed to be, an admission of any violation of any
25 statute or law or of liability by Defendants or of the truth of the allegations in the complaint.

26 10. In the interests of justice, the Court finds that there is no just reason to delay
27 of entry of a final judgment of dismissal with prejudice of this action as against the
28

Defendants and all Released Parties, as defined in the Settlement Agreement, and the Clerk of the Court is therefore directed to enter such a final judgment.

11. Terms used in this Order that are defined in the Settlement Agreement are, unless otherwise defined herein, used in this Order as defined in the Settlement Agreement.

12. Attached hereto as Exhibit A and incorporated herein by reference are the Court's Findings of Fact and Conclusions of Law.

**IT IS SO ORDERED.**

Date: DECEMBER 11, 2002

_____
A. Howard Matz
United States District Court Judge for the
United States District Court for the
Central District of California

- 4 -

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court on Plaintiffs' Motions for Final Approval of Class Action Settlement, for Attorneys' Fees and Costs, and for Incentive Awards to Class Representatives. The Court, having considered the papers submitted and the pertinent oral argument, hereby finds and rules as follows.

## I. INTRODUCTION

This action arises out of Defendants' administration of two retirement plans for employees of SBC Communications, Inc. ("SBC") and Pacific Telesis Group ("PTG"). SBC acquired PTG on or about April 1, 1997 in a corporate merger. Following that merger, PTG has continued to operate under its own name, as a wholly-owned subsidiary of SBC.

Plaintiffs are current and former employees of PTG and SBC who were participants in or beneficiaries of one of two 401(k) Plans administered by Defendants for the benefit of PTG employees. The 401(k) plan for salaried employees was known as the PTG Supplemental Retirement and Savings Plan for Salaried Employees ("Salaried Plan"). The 401(k) plan for nonsalaried employees was known as the PTG Supplemental Retirement and Savings Plan for Nonsalaried Employees ("Nonsalaried Plan"). Prior to 1998, all Plaintiffs' retirement accounts included stock in AirTouch Communications, Inc. ("AirTouch"). Plaintiffs and other plan participants had the right to take some or all of their AirTouch shares out of the plans. After SBC acquired PTG, SBC merged the plans with SBC's savings plans, which did not contain AirTouch Stock Funds, and the AirTouch Stock Funds that existed in the PTG plans were consequently liquidated. Plan participants could elect to have their AirTouch Stock Fund assets invested in other investment options within the SBC plans. AirTouch was subsequently acquired by Vodafone PLC.

In this lawsuit, Plaintiffs allege that, in eliminating the Plans' AirTouch Stock Funds, PTG and SBC breached their fiduciary duties to the plans'

1  participants in violation of the Employee Retirement Income Security Act of 1974
2  ("ERISA"). Plaintiffs further allege that when PTG and SBC communicated with
3  the Plans' participants regarding the participants' options upon elimination of the
4  AirTouch Stock Funds, they breached their fiduciary duties to the plans'
5  participants by failing to give complete and accurate information about the
6  participants' right to keep their AirTouch stock by taking it out of the plans. SBC
7  and PTG deny that the decision to eliminate the plans' AirTouch Stock Funds
8  violated any fiduciary duties owed to the plaintiffs. SBC and PTG also deny that
9  their communications with the plans' participants were in any way inadequate.

10      Two complaints related to the above facts were originally filed in federal
11  court: *Haney, et al. v. Pacific Telesis Group, et al.*, Case No. 00-758 AHM
12  (MANx) and *Gottlieb, et al. v. SBC Communications, Inc., et al.*, Case No. 00-
13  4139. After this Court dismissed federal and state securities law claims alleged in
14  the *Haney* complaint, the *Haney* and *Gottlieb* actions were consolidated by order
15  dated October 17, 2000. Ten plaintiffs from the two original cases then filed a
16  consolidated amended complaint on November 3, 2000. That complaint became
17  the operative pleading in this action.

18      After conducting substantial discovery, the parties submitted this matter to
19  voluntary mediation on December 20, 2001 and April 23, 2002. The parties
20  agreed to a settlement, and submitted their agreement and proposed class notice
21  to this Court for preliminary approval. After a hearing on July 22, 2002, the
22  Court certified this case as a class action for purposes of settlement under Federal
23  Rules of Civil Procedure 23(b)(1) and (b)(2) and granted preliminary approval of
24  the proposed settlement. Plaintiffs now move this Court for an order granting
25  final approval to the class settlement, awarding incentives to fifteen
26  representative plaintiffs, and awarding $2,462,500.00 in attorneys' fees and
27  $391,763.51 in costs.

28  **II.    THE SETTLEMENT AGREEMENT**

The settlement agreement provides as follows:

(1) The "class" is defined as: "All individuals who were participants in the Pacific Telesis Group Supplemental Retirement and Savings Plan for Salaried Employees and/or in the Pacific Telesis Group Supplemental Retirement and Savings Plan for Nonsalaried Employees who had a balance in the AirTouch Stock Fund within either of those two plans as of December 31, 1997." Settlement Agreement § 1.01(b).

(2) The Defendants' insurer, Chubb Insurance Co., will pay $10 million plus interest on behalf of Defendants to settle the class claims. *Id.* § 3.06(a).

(3) The class members will release all claims related to elimination of the Air Touch Stock Funds, merger of the PTG plans into the SBA plans, and Defendants' communications to class members about the funds' elimination or merger. The class members will not release any ERISA claims based on recordkeeping errors. *Id.* § 1.01(p) (defining "Released Claims").

(4) The Settlement Administrator will be Rosenthal & Company ("Rosenthal"). *Id.* § 1.01(t). All costs of administration will come out of the $10 million fund. *Id.* § 3.06(b). Attorneys' fees and costs of litigation also will be deducted from the fund.

(5) The remaining settlement fund sum will be paid into the SBC Salaried and Non-Salaried Plans and deposited into the accounts of class members. *Id.* § 3.06(e). The amount given to each class member will be determined according to the balance that member had in AirTouch Stock Funds as of December 31, 1997. *Id.* § 3.06(f)(1). Settlement amounts distributed into the SBC plans will be considered restorative contributions and will be invested according to the plan participants' current investment instructions. *Id.* § 3.06(g)(3).

(6) If a class member no longer has an account with the SBC plans, an account will be set up for him or her. If the settlement amount distributed into such

3

1   an account does not exceed $5,000, that amount will be automatically
2   distributed to the class member subject to all rollover rights the class
3   member has under the SBC plans or applicable law. If the settlement
4   amount exceeds $5,000, the class member will be given the opportunity to
5   elect any payment or rollover option available under the SBC Plans. *Id.* §
6   3.06(g)(4).
7   (7)  Class members are not allowed to opt out of the settlement. *Id.* § 3.04.
8   (8)  The parties and their counsel shall make no public statements regarding the
9   Settlement pending final approval. *Id.* § 3.07.

## III. NOTICE

In support of their motion for preliminary approval of this class settlement, the parties submitted a proposed class notice. At the hearing held on July 22, 2002, the Court instructed the parties to prepare a revised class notice that would meaningfully advise class members as to the estimated final settlement amount per AirTouch unit and as to the estimated costs class counsel would seek. The Court also instructed the parties to make the class notice available on the Internet and to list the appropriate web site address in the notice itself. The parties subsequently submitted a revised class notice, and the Court approved that notice by order dated August 14, 2002.

Notice of the proposed settlement was then mailed to each known class member, and a copy of the notice was made available at www.sbc-airtouchsettlement.com. The notice provided class members with a summary of the litigation, informed class members as to the terms of the proposed settlement (including the proposed method for distributing funds among the class members) and informed them that they would not be permitted to opt out of the class. The notice also advised that class counsel would seek Court approval for payments (not to exceed $2500 (each) to certain representative plaintiffs drawn from the amount available for attorneys' fees) and that class counsel would request $2.5

1  million in fees and approximately $420,000 in costs to be paid from the
2  settlement fund.
3       The notice informed class members that any comment or objection should
4  be filed with the Court by October 11, 2002 in order to ensure meaningful
5  consideration. Finally, the notice informed class members that they could appear
6  at the final approval hearing to comment on or object to the settlement (and/or to
7  the attorneys' request for fees and costs) or to enter an appearance for any other
8  reason. Although subsequently the date of the final hearing was subsequently
9  continued to December 5, 2002, Plaintiffs' attorney J. Paul Gignac was available
10 outside the courtroom at the time of the originally scheduled hearing. Declaration
11 of J. Paul Gignac ¶ 8. Only one class member appeared, and she indicated that
12 she did not have any objection to the settlement but was interested in learning
13 more about it. *Id.* ¶¶ 8-9. Class counsel informed her of the new date and time
14 for the hearing and offered to answer any questions she might have. *Id.* ¶ 10.

15 **IV. THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT**

16      There is a strong judicial policy favoring settlement of class actions. *Class
17 Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). A settlement
18 should be approved if it is "fundamentally fair, adequate and reasonable." *Id.*
19 This determination requires a balancing of several factors, which may include
20 some or all of the following: (1) the strength of plaintiffs' case; (2) the risk,
21 expense, complexity, and likely duration of further litigation; (3) the stage of the
22 proceedings and the extent of discovery; (4) the adequacy of the proposal; (5) the
23 experience and views of class counsel; and (6) the reaction of class members to
24 the proposed settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th
25 Cir. 2000). In addition, a settlement may not be approved if it is the product of
26 fraud or collusion between the parties. *Id.*

27
28

### A. The Strength of Plaintiffs' Case and the Risk, Expense and Complexity of Further Litigation

Plaintiffs have two distinct claims. First, Plaintiffs contend that by eliminating the Plans' AirTouch stock, Defendants breached their fiduciary duties (the "fund elimination claim"). Second, Plaintiffs contend that Defendants also breached their fiduciary duties by providing incomplete or inaccurate information about participants' rights to keep their AirTouch stock by taking it out of the plans (the "misrepresentation claim"). Defendants deny that they breached their fiduciary duties in any way and find strong support in recent Supreme Court precedent for their denials as to the fund elimination claim. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 889-90 (1996); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-444 (1999). In both *Lockheed* and *Hughes*, the Supreme Court held that plan sponsors could not be liable for breach of fiduciary duty based on amendments made to their plans. After conducting some discovery in this case, Plaintiffs determined that the elimination of AirTouch Stock Funds had been achieved by way of plan amendments. While the ultimate outcome as to Plaintiffs' fund elimination claim is not certain, *Lockheed* and *Hughes* identify a central weakness in Plaintiffs' claim.

This litigation also involved complex questions of law under ERISA, as well as complex questions relating to the appropriate remedies available to Plaintiffs. This case had been ongoing for two years when the parties achieved a settlement agreement. Plaintiffs had, at the time of settlement, moved for class certification, and that motion was vigorously contested. The parties also had indicated that this case would involve substantial additional motion practice.

Thus, the Court finds that the weakness evident in Plaintiffs' fund elimination claim, as well as the complexity and expense of further litigation, weigh in favor of settlement.

6

### B. The Stage of the Proceedings and the Extent of Discovery

The parties to this case conducted substantial discovery. SBC deposed all current named Plaintiffs and some formerly named plaintiffs. Plaintiffs deposed the Director of Benefit Plans Administration for the PTG health and welfare benefit plans and the SBC Director of Benefits responsible for administration of the Salaried and Nonsalaried Savings Plans. Plaintiffs also reviewed approximately 135,000 documents produced by Defendants, including governing plan documents, documents related to the decision to merge the PTG and SBC plans, plan merger documents, documents related to the decision to discontinue the AirTouch Funds, and communications with plan participants about the plan merger and discontinuance of the AirTouch Funds.

Although additional discovery may have been required if this case continued to trial, the deposition testimony and documents referred to above represent the core of Plaintiffs' claims. Class counsel were in a good position at the time of settlement to evaluate the evidence and assess the value of potential recovery.

### C. The Adequacy of the Proposed Settlement

In their consolidated complaint, Plaintiffs allege that at the time of the AirTouch Funds elimination, their AirTouch stock was worth $635 million Consolidated Amended Complaint ¶ 10. At the hearing held prior to preliminary approval, the Court questioned class counsel about the difference between that amount and the $10 million provided by the settlement. Having considered the facts of this case and the parties' submissions and oral argument, the Court finds that the settlement is adequate. Plaintiffs' ability to recover on their claims, particularly their fund elimination claim, is far from certain, and the difference between the trading price of SBC and Vodafone common stock (the measure of damages) has fluctuated and continues to fluctuate significantly. Moreover, a cash settlement for a fraction of potential recovery does not render a settlement

7

inadequate or unfair. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.1982)). The settlement funds will provide recovery to all class members and will be distributed fairly among the class members on a pro rata basis.

### D. The Experience and Views of Class Counsel

Class counsel are uniquely able to assess the potential risks and rewards of litigation. Here, Plaintiffs have been ably represented by knowledgeable class counsel with many years of combined (and often successful) class litigation experience.[1] The Court is familiar with the quality and thoroughness of class counsel's work on this case, as well as their reputation, and accords their opinion corresponding weight. Class counsel support approval of the proposed settlement.

### E. The Reaction of Class Members to the Proposed Settlement

Notice of the settlement was mailed to 29,198 class members. Forty-five class members contacted class counsel. All requested and received information about the mechanics of the settlement, and several expressed satisfaction with the terms of the settlement. One class member expressed concern about her ability to roll settlement amounts into her individual retirement account ("IRA"). Declaration of Steven M. Tindall ¶ 9. By letter, class counsel informed her that former plan participants' rollover rights are protected by the settlement agreement. *Id. See* Settlement Agreement § 3.06(g)(4).

In a letter sent to Rosenthal, the Settlement Administrator, Jean-Luc

---

[1] The class is represented by the law firms of Lieff, Cabraser, Heimann & Bernstein, LLP; Arias, Ozzello & Gignac; Lewis & Feinberg, P.C.; Cohen, Milstein, Hausfeld & Toll, P.L.L.C.; the Gottesdiener Law Office; and Haney, Buchanan & Patterson, LLP. J. Paul Gignac, now with Arias, Ozzello & Gignac, previously represented Plaintiffs while with his prior firm, Cappello & McCann. Attorney Eli Gottesdiener also previously represented Plaintiffs while working at Sprenger & Lang. The Law Office of Gerald P. Cunningham also worked on this matter early in the litigation.

8

Gaudremeau, a class representative, indicated some ambivalence with respect to the settlement agreement. While Mr. Gaudremau's letter states that he is dissatisfied with Defendants' denial of liability and complains that he will not recover what he estimates to have been his total loss, Mr. Gaudremau also notes that he did sign the settlement agreement because he recognized that the money the settlement will provide is important for the members of the class. Mr. Gaudremau's letter indicates that he would have preferred to have his proverbial "day in court" so that Defendants, or others like them, would be held accountable. However, Mr. Gaudremau decided to place what he describes as the interest of the class ahead of his own.

In addition to Mr. Gaudremau's letter, the Court also received one additional letter from class member David B. Delamore. Mr. Delamore's letter expresses a general dissatisfaction with the settlement and with Defendants' conduct.

Although the Court understands that these two class members feel they have been wronged and deserve a larger recovery, the Court finds, based on its consideration of the file and the information presented by the parties, that this settlement provides a fair and adequate result for the class as a whole.

### F. Fraud or Collusion

The parties to this case achieved settlement only after arms-length negotiation through mediation. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." Manual for Complex Litigation (Third) § 30.42 (1995). Here, two class representatives also attended the mediation in person. Memorandum in Support of Motion for Final Approval at 2. There is no evidence, nor has there been any suggestion, that fraud or collusion played any part in this settlement.

In conclusion, the Court, having considered the above factors, finds the

settlement in this case to be fair, adequate and reasonable.

## V. INCENTIVE AWARDS

The Court also approves the limited incentive awards sought for fifteen (15) representative Plaintiffs, or former representative Plaintiffs, who were deposed by Defendants.[2] These awards ($2,500 per plaintiff) will be drawn from the amount set aside for attorneys' fees and costs, not from the net settlement funds available to class members.

"Incentive awards are not uncommon in class litigation where, as here, a common fund has been created for the benefit of the class." *Hughes, et al. v. Microsoft Corp., et al.*, 2001 U.S. Dist. LEXIS 5976, *39 (W.D. Wash. 2001) (Coughenour, C.J.). In this case, the fifteen representative plaintiffs who will be entitled to an incentive award put forth substantial time and effort during the course of this already-lengthy litigation. They assisted counsel in their investigations, assisted in preparation of the complaints, met with counsel to prepare for their depositions, sat for those depositions, produced documents at their depositions, and regularly reviewed pleadings, correspondence and other documentation. Declaration of J. Paul Gignac ¶ 5. Some of these Plaintiffs also participated in this litigation while still employed by Defendants.

Given these Plaintiffs' efforts, and the risk they bore of not recovering any of their costs, the Court finds that the $2500 sought for each Plaintiff is eminently fair and reasonable.

## VI. ATTORNEYS' FEES AND COSTS

In common fund cases such as this one, the district court has discretion to

---

[2]These Plaintiffs are Larry F. Gottlieb, Barry P. Resnick, Adrienne F. Resnick, Dorothy S. Dowding, John B. Riley, Allan M. Filipeck, Linda Acox, Jean-Luc Gaudremeau, Diane Wilson, James Weinald, Darlene Haney, Steven Gunning, Christopher Seibert, Dahlia Amodei and Susan Kahue.

award fees based either on a lodestar or percentage-of-the-fund method.³ *Vizcaino, et al. v. Microsoft, et al.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Here, the parties have proceeded based on a percentage-of-the-fund calculation, and class counsel seek $2,462,500.00 in fees. This amount (from which the incentive awards also will be drawn) is below the 25% that was listed in the notice to class members and that the Ninth Circuit has described as a "benchmark" in common fund cases. *Vizcaino*, 290 F.3d at 1047.

No class member has objected to the fee award provided for in the class notice. Morever, a fee disbursement of $2,462,500 is appropriate in light of the circumstances of this case. Class counsel have achieved significant results for the class. As described above, this case was vigorously litigated and a victory for Plaintiffs was far from certain. Counsel have acquitted themselves well and have achieved a fair and adequate settlement for their clients. By obtaining a settlement that provides for disbursement into the Plaintiffs' plan accounts, class counsel generated additional benefits for their clients in the form of favorable tax treatment. Class counsel also bore the significant risk necessarily attendant in this contingency fee litigation. At the time settlement was achieved, the parties had already spent two years litigating this case and had conducted substantial discovery.

Class counsel's lodestar amount, as supported by the detailed fee reports provided to the Court, is $1,932.326.40. The 1.27 multiplier represented by the $2,462,500.00 request is reasonable in light of the time and labor required, the complexity of the case, the contingent nature of counsel's fee arrangements, the work counsel was unable to take on given this case, the experience and ability of

---

³Application of common fund principles in awarding attorneys' fees is appropriate even though ERISA itself contains a fee-shifting provision. *See Florin v. Nationsbank of Georgia*, 34 F.3d 560 (7th Cir. 1994). *See also Staton, et al. v. Boeing Co., et al.*, 2002 WL 31656586, *22-24, __ F.3d __ (9th Cir. 2002).

11

the attorneys and the results obtained.[4] *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (listing factors to consider in determining reasonable fee). A 1.27 multiplier is well within the range of multipliers applied in common fund cases. *Vizcaino*, 290 F.3d at 1051 n.6 and Appendix.

Finally, the Court finds that class counsel's request for $391,763.51 in costs also is reasonable. Under the common fund doctrine, class counsel is entitled to reimbursement for reasonable out-of-pocket expenses and costs in obtaining a settlement. *Vincent v. Hughes Air West Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The amount requested here is below the $420,000 estimate provided in the class notice, and the Court has received no objection to that estimate. The Court has reviewed the itemized documentation of costs provided by class counsel and has found no indication that the amount spent by class counsel in pursuing this litigation is either unreasonable or inappropriate.

## CONCLUSION

For the foregoing reasons, the Court finds that the proposed settlement is fair, adequate and reasonable. Accordingly, the settlement is ORDERED approved pursuant to Federal Rule of Civil Procedure 23(e). The fifteen representative Plaintiffs listed above, *see supra* note 2, shall be paid $2,500 each from the Settlement Fund as incentive awards for their service on behalf of the Class. Class counsel shall be paid $2,462,500.00 in fees and $391,763.51 in costs, *less* the incentive payments to class representatives, from the Settlement Fund.

---

[4] This lodestar amount also does not include the 133 hours ($43,225.00) spent by Gerald P. Cunningham. Mr. Cunningham apparently did not provide information concerning his time until after the motion for award of attorneys' fees was filed.

12